The BUDD COMPANY

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION, Urban Mass Transportation Administration et al.

Civ. A. No. 80–4396.

United States District Court,
E. D. Pennsylvania.

March 13, 1981.

**556**

Howard D. Scher, Philadelphia, Pa., for plaintiff.

Joan K. Garner, Asst. U. S. Atty., Brett Schlossberg, Philadelphia, Pa., Kenneth S. Levy, Dept. Law & Pub. Safety, Trenton, N. J., for defendants.

## MEMORANDUM

GILES, District Judge.

Plaintiff, The Budd Company ("Budd") a disappointed bidder on a rail car manufacturing contract in the State of New Jersey seeks injunctive relief and monetary damages against the United States Department of Transportation, Urban Mass Transportation Administration ("UMTA") and the Administrator, Theodore Lutz, for alleged violation by UMTA of its own grant guidelines. The relevant guidelines were directed to the New Jersey Transit Corporation ("NJTC"), the grantee.

Federal question jurisdiction is alleged under 28 U.S.C. § 1331(a) and a contract claim of less than $10,000 is made against the United States under the Tucker Act, 28 U.S.C. § 1346(a)(2). Budd also avers violations of the Fifth Amendment, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and various federal statutes and regulations pertaining to federal procurement. Budd asserts that through the UMTA guidelines it enjoys an implied private cause of action to compel compliance. Budd contends that both the actions of NJTC, the state defendant, and UMTA, the federal defendant, give rise to federal causes of action.

Before this court can consider the merits of Budd's claim, particularly its motion for preliminary injunction, it must address and decide the defendants' alternative motion to dismiss or transfer this action due to improper venue. There is no dispute that as to federal defendant UMTA venue in this district is proper. 28 U.S.C. § 1391(e). Plaintiff contends that venue is also proper as to NJTC because allegedly it is doing business within the Commonwealth of Pennsylvania on a continuous basis and is amenable to state service of process under the Long Arm Statute, 42 Pa.C.S.A. § 5322(a) (Supp.1980), and, is a foreign corporation doing business in this district within the meaning of 28 U.S.C. § 1391(c). NJTC counters that it is a public agency of the New Jersey Department of Transportation, that it is a corporation in name only, and that it does no business with or in Pennsylvania. NJTC wholly owns a transit company, Transport of New Jersey ("TNJ") an operating bus company, having acquired it through an October, 1980 stock purchase. NJTC gives operating subsidies to TNJ and two other New Jersey companies, Delaware River Coach Company and Starr Transit. The latter are privately owned companies. NJTC leases buses to the transit companies

for $1.00 per year. Pursuant to an Interstate Commerce Commission license, TNJ carries bus passengers from New Jersey across the Delaware River to Pennsylvania and back again. It similarly operates between New York and New Jersey. Despite the stock acquisition by NJTC, TNJ remains a separate corporate entity. Plaintiff argues that NJTC does business in Pennsylvania through the wholly owned subsidiary, TNJ.

## IN PERSONAM JURISDICTION AND VENUE

"The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum ... neither personal jurisdiction nor venue is fundamentally preliminary in the sense that subject-matter jurisdiction is, for both are personal privileges of the defendant, rather than absolute strictures on the court, and both may be waived by the parties ... Accordingly, when there is a sound prudential justification for doing so, we conclude that a court may reverse the normal order of considering personal jurisdiction and venue."

*Leroy v. Great Western United Corporation,* 443 U.S. 173, 180, 99 S.Ct. 2710, 2715, 61 L.Ed.2d 464 (1979) (citations omitted).

In *Leroy,* the United States Supreme Court reviewed a holding by the Texas Supreme Court that the state's long arm statute was coextensive with the constitutional minimum contacts standards. The Court first addressed the statutory issue of proper venue rather than determining a novel constitutional issue, namely whether the Texas statute conformed with the requirement of due process. *Id.* It held that venue was not proper and therefore reversed. *Id.* at 180, 99 S.Ct. at 2715.

Similarly, in the instant case the relevant Pennsylvania statute 42 Pa.C.S.Ann. § 5322(b) (Supp.1980) makes the state's long arm jurisdiction coextensive with that allowed by the United States Constitution.

Accordingly, this court shall adhere to the teaching of *Leroy, supra,* and not address the constitutional issue first; rather, I shall first consider venue.

### § 1391(c)

Budd contends that venue is proper in this district because NJTC is "doing business" in Pennsylvania through its wholly owned subsidiary TNJ. TNJ does operate buses in the Commonwealth. Even assuming that NJTC is a corporation within the meaning of the statute, the mere fact that its wholly-owned subsidiary does business in this district is not sufficient for § 1391(c) venue purposes as to the parent.

In *Manville Boiler Co. v. Columbia Boiler Co.,* 269 F.2d 600, 606 (4th Cir. 1959) a case involving patent infringement, the Fourth Circuit Court of Appeals stated:

Though there was advertising matter referring to the office of the Virginia corporation as a factory branch and Columbia's home office in Pottstown as its offices and factory, suggesting a unitary business, the operations of the two corporations were kept distinct and separate. The Virginia corporation was treated as a separate entity, though its policies and activities were directed from Pottstown. Columbia sold boilers to the Virginia corporation, which paid for them, usually promptly, and resold them to customers in Virginia. Columbia did not service boilers sold by the Virginia corporation to Virginia customers, and it can be held to have a regular and established place of business in Virginia only by treating the office of the Virginia corporation as Columbia's regular and established place of business.

*Accord Shapiro v. Ford Motor Co.,* 359 F.Supp. 350, 352 (D.Md.1973). The *Manville Boiler Co.* court held that the question of venue was controlled by *Cannon Manufacturing Co. v. Cudahy Packing Co.,* 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 and that even if the rule enunciated in *Cannon* unduly emphasized corporate form over corporate control, the rule was well established. 269 F.2d at 606.

Similarly, in *Papercraft Corporation v. Procter & Gamble Company*, 439 F.Supp. 1060, 1062 (W.D.Pa.1977) the trial court stated quite appropriately:

"Where a parent corporation is totally removed from this district, this court cannot subject the parent to venue within this district solely because the parent corporation owns a profitable subsidiary which is doing business here."

(citations omitted).

The *Papercraft* court stated that to establish venue, the "doing business" requirement of § 1391(c) must be met *solely* by the parent corporation.

"Such a limitation on venue is consistent with the Supreme Court's ruling that where the separation between a parent corporation and a subsidiary is real, albeit formal, the subsidiary's activities are not a sufficient basis for subjecting the non-resident parent to the jurisdiction of the forum state.... The *Cannon [Manufacturing Company v. Cudahy Packing Company*, 267 U.S. 333, 335–337, 45 S.Ct. 250, 251, 69 L.Ed. 634 (1925)] rule has been applied to questions of venue as well as questions of jurisdiction."

*Id.*

In *Cannon* the court held no jurisdiction existed over the parent company solely because its subsidiary did business in the forum state. *Id.*

Similarly, in *N-Triple-C Inc. v. American Telephone & Telegraph Co.*, 377 F.Supp. 813 (E.D.Pa.1974) the trial court held that it lacked venue and jurisdiction over a parent company which was not doing business in this district. The court stated that:

[Plaintiff's] logic would subject a parent corporation totally removed from a district to venue within that district if the parent owned a profitable subsidiary there. Conversely, it would expose a subsidiary which did not itself do business within a district to suit within that district merely because the parent corporation was active in that district. Joint tariffs, or revenues, do not extinguish separate corporate forms ... only joint activities within this district could subject these operating companies to jurisdiction and venue here.

*Id.* at 815.

Here, the parties have stipulated that NJTC, itself, does no business in the Eastern District of Pennsylvania. The relevant cases cited above and the parties' stipulation persuade this court that, as to NJTC, venue is improper because only the wholly owned subsidiary has business contacts with Pennsylvania.

■ Hence, the remaining issue is whether the action should be transferred or must be dismissed. Under 28 U.S.C. § 1406(a) a court may transfer or dismiss a case for improper venue. *See e. g., Goldlwar v. Heiman* 369 U.S. 463, 465–466, 82 S.Ct. 913, 915–916, 8 L.Ed.2d 39 (1962).[1] Courts favor

---

1. Rule 19, Fed.R.Civ.Pro. does not expressly make provisions for transferring cases where venue is improper vis à vis an indispensable party.

The applicable parts of Rule 19 read as follows:

"Rule 19. Joinder of Persons Needed for Just Adjudication

"(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the

persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest....

"(b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a

resolution of disputes on the merits. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972), *Goldlwar v. Heiman*, 369 U.S. at 466–467, 82 S.Ct. at 915–916; *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). However, if equity and good conscience so require, a court may dismiss an action for failure to join an indispensable party. Rule 19(b).

■ Plaintiff accuses NJTC of failing to obey the federal regulations governing the disputed bid. For this and other reasons, the parties agree that NJTC should be joined if feasible within the meaning of Rule 19(a). Thus, this case fits into that category of cases contemplated by the Third Circuit when it stated:

> "Difficulties arise, however, in the case of persons who, although they satisfy the requirements of 19(a), cannot be effectively joined because ... they have a valid objection to the court's venue after joinder. When ... the joinder of a person meeting the tests set out in 19(a) is not feasible only then is the court to apply Rule 19(b) ... to determine whether the action may proceed without that person or must be dismissed ... [thus] 'Rule 19(a) embraces all those persons who should be joined, including those whose joinder is not feasible and who ultimately may be regarded as indispensable under Rule 19(b).'"

*Field v. Volkswagenwerk Ag*, 626 F.2d 293, 300 (3d Cir. 1980).

The court has determined that venue is improper. Therefore, NJTC may not continue as party to this action unless it consents. *See Leroy v. Great Western, supra*, 443 U.S. at 180, 99 S.Ct. at 2715. NJTC will not. The court must decide then, whether in equity and good conscience the action may proceed without NJTC or must be dismissed because NJTC is indispensable.

In *Provident Tradesmens Bank and Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) the Supreme Court stated that determination of whether a party was indispensable must be based on stated pragmatic considerations. *Id.* at 106–107, 117, n.12, 88 S.Ct. at 736–737, 741, n.12. Accordingly, the court must consider the four interests which Rule 19(b) encompasses. "First, the plaintiff has an interest in having a forum." *Id.* at 109, 88 S.Ct. at 737. The *Provident* court noted that in a case like this where the parties have not reached the trial stage, the "strength" of this interest depends upon the availability of an alternative forum. *Id.*

Secondly, defendant has an interest in avoiding multiple litigation, sole responsibility for a *shared* liability, and inconsistent relief. Thirdly, the court must consider the interests of non-parties. And, finally, the court must further the public interest in complete, consistent and efficient settlement of legal controversies. *Id.* at 110–111, 88 S.Ct. at 738–739.

Regarding pragmatic considerations, Budd has an alternative forum in which this action may be brought, namely the Federal District Court of New Jersey. All defendants reside there and the claim arose there. Venue is proper in that district. Budd is not faced with a statute of limitations problem and a dismissal would not thereby deprive Budd of a forum. *Cf. Goldlwar v. Heiman, supra*, 369 U.S. at 466, 82 S.Ct. at 915–916 ("[t]his case is itself a typical example of the problem sought to be avoided, for dismissal here would have resulted in plaintiff's losing a substantial part of its cause of action under the statute of limitations....")

Similarly, NJTC and the public have an interest in avoiding unnecessary multiple litigation. Budd seeks injunctive relief compelling NJTC to adhere to the relevant UMTA regulations. However, such relief would not be effective against NJTC if NJTC were a non-party. For it to obtain relief against NJTC, it is foreseeable that

judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder."

Budd would have to sue NJTC in a separate forum.[2]

To the extent that Budd may be entitled to damages for alleged breach of the federal regulations, UMTA and NJTC may share the liability. UMTA allegedly failed to enforce the guidelines and Budd alleges NJTC failed to follow them. This consideration militates strongly in favor of one trial in one forum.

In addition, Bombardier, the successful bidder has an interest in avoiding multiple litigation and inconsistent verdicts.

The court is not aware, nor have the parties apprised the court, of non-parties whose rights would be prejudiced if the court dismissed the action.

Finally, the public has an interest in a consistent, complete and efficient settlement of this controversy in *one* forum.

Accordingly, this case will be dismissed because plaintiff has an alternative forum, defendants have a right to avoid multiple litigation in which there may be shared responsibility, the interests of non-parties will not be prejudiced and the public has an interest in consistent, complete and efficient resolution of the controversy.

2. Budd previously initiated a state proceeding in New Jersey against defendants. Defendants assert the New Jersey action was dismissed for failure to prosecute and that estoppel doctrines apply. For the reasons discussed above the court need not and does not rule on those assertions.